## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **THOMAS HELFRICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | |
| | ) | |
| **TRANS UNION LLC and TRUIST** | ) | |
| **BANK, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>COMPLAINT</u>

1.   This is an action for damages brought by an individual consumer, Thomas Helfrich, against Trans Union LLC ("TU") and Truist Bank, Inc. ("Truist") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

2.   Mr. Helfrich is the victim of identity theft.

3.   This is not a case in which Mr. Helfrich simply claims he is the victim of identity theft.  *Truist* told Mr. Helfrich that he was the victim of identity theft: "We are contacting you concerning a fraudulent account that has recently been opened using some or all of your personal information.  We believe you may be the victim of Identity Theft."

4.     Truist also told Mr. Helfrich in the same letter that it had already taken steps to correct his financial and credit information, including closing the fraudulent accounts and submitting a request to remove the information from the credit bureaus.

5.     Despite these seemingly helpful actions, when Mr. Helfrich disputed erroneous identity theft information in his TU consumer report, Truist told TU at least five times that there was no identity theft involved, and it verified to TU that the accounts belonged to Mr. Helfrich.

6.     And TU took Truist's word, ignoring Truist's written confirmations it sent to Mr. Helfrich and which Mr. Helfrich provided to TU.

7.     Then, even though Truist had informed Mr. Helfrich several times that the account was the result of identity theft, and even though TU had documentation from Truist showing that it knew the account was the result of identity theft, Truist and TU further damaged Mr. Helfrich's credit by reporting the account as "charged off".

8.     With TU's and Truist's false reporting, and their failures to correct the erroneous information that does not belong to Mr. Helfrich, Mr. Helfrich has suffered significant damage, including denials of loans and credit cards.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 as Defendants regularly conduct business in this district, including contracting to supply goods and services in this district, and a substantial part of the events giving rise to the claims occurred in this district.

11.     Mr. Helfrich is a resident of this division and district.

12.     Mr. Helfrich is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

13.     Defendant TU is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district.

14.     Defendant TU can be served via its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

15.     Defendant Truist is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2, and it conducts substantial and regular business activities in this judicial district.

3

16.     Defendant Truist can be served via its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of the FCRA Require Substantive Investigations and Prohibit Mere "Parroting" of CRAs' Creditor-Customers*

17.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).  "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)."  *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

18.     Section 1681e(b) sets forth the CRA's overall duty with respect to accuracy:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

19.    Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through a dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

20.    Section 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

21.    It has long been the law that a CRA, such as TU, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v.*

*Schmidt,* 805 F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Com. Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

22.    That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

23.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, 'investigation,' is defined as '[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining 'investigation' as 'a searching inquiry').

357 F.3d 426, 430 (4th Cir. 2004).

24.    Further, as TU is aware, courts have repeatedly held that even though the term "investigation" is not used in Section 1681e(b), it is clear that a CRA has a

6

duty to conduct a reasonable initial investigation pursuant to Section 1681e(b) as well as Section 1681i(a) and that this is "central" to the CRA's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) 'reasonable procedures' that (2) 'assure' (3) 'maximum possible accuracy.' To 'assure' means 'to make sure or certain: put beyond all doubt.' *Webster's Third New International Dictionary* 133 (1993). 'Maximum' means the 'greatest in quantity or highest degree attainable' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived . . . .' *Id.* at 1396, 1771. It is difficult to imagine how 'maximum possible accuracy' could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a 'reinvestigation,' necessarily implying that an 'investigation' was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

25.    The Consumer Financial Protection Bureau has noted that "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, Mar. 2, 2017). This is particularly true as to how TU has complied with its now 50-year-old obligation to conduct meaningful accuracy investigations. TU has been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what its customer-creditors instruct.

26.     Additionally, the FCRA imposes duties on persons who furnish information to a consumer reporting agency (a "furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).  Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency.  15 U.S.C. § 1681s-2-(b)(1)(A-E).[1]

27.     Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to consumer reporting agencies.  After a consumer has submitted a dispute to a consumer reporting agency, the consumer reporting agency must notify the furnisher of the disputed information.  15 U.S.C. § 1681i(a)(2).  The consumer reporting agency must provide this notice of dispute within five days of receipt of the dispute and must include "all relevant information" provided by the consumer. 15 U.S.C. § 1681i(a)(2)(B).

28.     Once a furnisher receives notice of a dispute from a consumer reporting agency, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency in connection with the

---

[1] Plaintiff asserts a claim against Truist under Section 1681s-2(b), and not under Section 1681s-2(a).

dispute; and (3) report the results of the investigation to the consumer reporting agency.  15 U.S.C. § 1681s-2(b)(1)(A)-(C).

29.    Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to consumer reporting agencies, as appropriate based on the results of the reinvestigation.  15 U.S.C. § 1681s-2(b)(1)(E).

### *Facts Relevant to Mr. Helfrich*

30.    Mr. Helfrich is the victim of identity theft.

31.    Beginning in September 2024, Mr. Helfrich notified Truist that someone had used his identity to open a savings account and take out a $30,000 personal loan.

32.    Mr. Helfrich provided Truist with his personal information, a copy of Truist's own Uniform Affidavit for Identity Theft, a copy of the police report he filed with the Alpharetta Police Department, a copy of his FTC Identity Theft Report, his driver's license, and proof of residency.

33.    Truist received the information Mr. Helfrich sent.

34.    Truist confirmed to Mr. Helfrich that he was the victim of identity theft in a November 27, 2024 letter:

Truist Bank
Identity Theft Victim AssistanceGroup
P.O. Box 819
Wilson, NC 27894

**TRUIST** HH

Nov 27, 2024

Thomas C Helfrich

Re: Case Number - 186336

Dear Thomas C Helfrich:

We are contacting you concerning a fraudulent account that has recently been opened using some or all of your personal information. We believe you may be a victim of Identity Theft and have taken the following steps to correct your financial and credit information:

- ☐ Closed the following accounts:
  - Retail Checking  9953
  - Retail Loan      9366
- ☐ Submitted a request to remove the information from the credit bureaus (Equifax, TransUnion, & Experian).

We would also like to provide you with some information to ensure your identity is protected.

- ☐ You may place fraud alerts with the three major credit bureaus by contacting Equifax at 888-766-0008.
- ☐ You may also place an extended fraud alert through mail by downloading and following the instructions on the Alert Request Form found on www.equifax.com. Please be advised this will require a police report.
- ☐ Pull a free copy of your credit file at www.annualcreditreport.com or call 877-322-8228.
- ☐ We recommend that you notify the Internal Revenue Service (IRS) using the Form 14039 to indicate that you have been a victim of a non-federal tax related Identity Theft. You may contact the IRS at 800-908-4490 or visit online at www.irs.gov.

As an additional measure of protection, we have arranged for a discounted membership in an identity theft protection service provided by CSIdentity Corporation, a part of Experian. To enroll, go to www.idnotify.com/truist select your plan and complete the secure online form on the enrollment screen. If you prefer to enroll by phone, please call CSIdentity Corporation 888-852-7176. Please allow up to 60 days for credit bureaus or any third party to update your information. Use this letter as verification until your updated information is available.

If you have any further questions, please call the Identity Theft Victim Assistance group at, 8:30 am to 5:00 pm ET, Monday through Friday, at the number listed below or 866-802-4955.

Sincerely,

MICHELLE A.
Financial Crimes Case Analyst
Enterprise Fraud Management
Identity Theft
Direct: (866) 802-4955

Truist Bank, Member FDIC. © 2023 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

F3212 4

10

35.    Truist also told Mr. Helfrich that its internal fraud investigation confirmed that the fraudulent account had been opened in person at a branch in North Carolina.

36.    Mr. Helfrich lives in Georgia and had opened no accounts in North Carolina, let alone any accounts in person in North Carolina.

37.    But shortly after Truist's November 27th letter, upon review of his TU consumer report, Mr. Helfrich discovered that the fraudulent Truist account remained on the report.

38.    Mr. Helfrich followed up with Truist, including several emails and phone calls to Truist, to try to correct the information it was reporting to TU.

39.    Most of Mr. Helfrich's emails to idtheftgroupsupport@truist.com went unanswered by Truist, and his attempts to communicate with Truist failed.  The fraudulent information remained on his TU consumer report.

40.    In February 2025, Mr. Helfrich filed his first dispute with TU concerning the Truist account.

41.    TU received the dispute.

42.    TU sent Mr. Helfrich's dispute to Truist.

43.    Truist received the dispute from TU.

44.     Truist did not conduct a reasonable reinvestigation into Mr. Helfrich's dispute.

45.     For example, Truist failed to review the documents in its possession showing that it had already confirmed to Mr. Helfrich in writing that the account was fraudulent and the result of identity theft.

46.     Instead, Truist reported to TU that it had verified the reporting.

47.     Once it received Truist's response, TU failed to correct its inaccurate reporting.

48.     TU simply parroted the results of Truist's reinvestigation results, and took no steps of its own to determine whether the reporting that Mr. Helfrich had an account with Truist.

49.     Following Mr. Helfrich's first dispute with TU, he continued to follow up with Truist directly.

50.     On March 4, 2024, Mr. Helfrich again emailed Truist at idtheftgroupsupport@truist.com, attaching for a second time the Alpharetta Police Department report and other documentation that he had already sent to Truist.

51.     Shortly after the email, Truist responded to Mr. Helfrich's email and confirmed the identity theft: "Attached is a copy of the letter Confirming ID theft and closing out your case."

52.    But the fraudulent account remained on Mr. Helfrich's TU credit file.

53.    Thus, Mr. Helfrich filed his second dispute with TU concerning the Truist account shortly thereafter.

54.    As part of this dispute, Mr. Helfrich sent to TU the November 27, 2024 Truist letter.

55.    TU received the dispute.

56.    TU sent Mr. Helfrich's dispute to Truist.

57.    TU sent to Truist the documents Mr. Helfrich attached to his dispute.

58.    Truist received the dispute from TU.

59.    Truist received the documents Mr. Helfrich attached to his dispute.

60.    Truist did not conduct a reasonable reinvestigation into Mr. Helfrich's dispute.

61.    For example, Truist failed to review the November 27, 2024 letter that TU provided to it.

62.    Additionally, Truist failed to review the documents already in its possession showing that it had already confirmed to Mr. Helfrich that the account was fraudulent and the result of identity theft.

63.    Instead, Truist reported to TU that it had verified the reporting.

64.    TU failed to correct its inaccurate reporting.

65. TU simply parroted the results of Truist's reinvestigation results, and took no steps of its own to determine whether the reporting that Mr. Helfrich had an account with Truist.

66. For example, TU failed to review and consider all relevant information submitted by Mr. Helfrich, including the November 27, 2024 Truist letter.

67. Instead, TU told Mr. Helfrich that "[t[he disputed item was verified as accurate."

68. Thus, at the same time that Truist was telling Mr. Helfrich that it had confirmed the identity theft, it was confirming to TU that it had verified the account as accurate.

69. Following Mr. Helfrich's second dispute, he filed three additional disputes with TU.

70. TU received the third, fourth, and fifth disputes.

71. TU sent Mr. Helfrich's disputes to Truist.

72. TU sent to Truist the documents Mr. Helfrich attached to his disputes.

73. Truist received the third, fourth, and fifth disputes from TU.

74. Truist received the documents Mr. Helfrich attached to his disputes.

75. Truist did not conduct reasonable reinvestigations into Mr. Helfrich's disputes.

76. For example, Truist failed to review the November 27, 2024 letter that TU provided to it.

77. Additionally, Truist failed to review the documents already in its possession showing that it had already confirmed to Mr. Helfrich that the account was fraudulent and the result of identity theft.

78. Instead, Truist reported to TU each time that it had verified the reporting.

79. TU failed to correct its inaccurate reporting each time.

80. TU simply parroted the results of Truist's reinvestigation results, and took no steps of its own to determine whether the reporting that Mr. Helfrich had an account with Truist.

81. For example, TU failed to review and consider all relevant information submitted by Mr. Helfrich, including the November 27, 2024 Truist letter.

82. Instead, TU told Mr. Helfrich in response to his third, fourth, and fifth disputes that the disputed item was verified as accurate.

83. The one difference amongst TU's responses was that, in its response to Mr. Helfrich's fourth dispute, TU informed Mr. Helfrich that the account status was now being changed to "Charged Off."

84.    Thus, even though Truist had informed Mr. Helfrich several times that the account was the result of identity theft, and even though TU had documentation from Truist showing that it knew the account was the result of identity theft, Truist and TU were further damaging Mr. Helfrich's credit by reporting the account as "charged off".

85.    Because of Defendants' actions and their failure to corrects their errors, Mr. Helfrich has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with his normal and usual activities.

86.    For example, Mr. Helfrich has been denied a loan with JPMorgan Chase Bank and a credit card with Truist, all because of the erroneous information on his TU report.

## FIRST CLAIM FOR RELIEF

## (15 U.S.C. § 1681i(a))

## (against TU)

87.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

88.     After Plaintiff submitted his disputes, Defendant TU violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

89.     After Plaintiff submitted his disputes, Defendant TU violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

90.     After Plaintiff submitted his disputes, Defendant TU violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

91.     As a result of these violations of 15 U.S.C. § 1681i(a)), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

92.     The violations by Defendant TU were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

17

§ 1681n.  Alternatively, Defendant TU was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

93.    Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

## (15 U.S.C. § 1681e(b))

## (against TU)

94.    Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

95.    Defendant TU violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

96.    Defendant TU reported information that it had reason to know was inaccurate.

97.    Defendant TU knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

98.    Defendant TU obtained or had available substantial written materials that apprised it of its duties under the FCRA.

99.    Despite knowing of these legal obligations, Defendant TU acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

100.   As a result of these violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

101.   The violations by Defendant TU were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant TU was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## THIRD CLAIM FOR RELIEF

## (15 U.S.C. § 1681s-2(b))

## (against Truist)

103.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

104.   Defendant Truist understood the nature of Plaintiff's dispute when it received them from the CRA.

105.   Defendant Truist violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

106.   Defendant Truist violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRA.

107.   Defendant Truist violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate and derogatory information it was reporting to the CRA about Plaintiff.

108.   Defendant Truist knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

109.   Defendant Truist obtained or had available substantial written materials that apprised it of its duties under the FCRA.

110. Despite knowing of these legal obligations, Defendant Truist acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

111. Defendant Truist's violation of the FCRA was willful, rendering it liable pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant Truist was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Actual damages to be determined by the jury, or statutory damages of $100 to $1,000 to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Attorneys' fees; and

4. Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: May 19, 2025

By: /s/ Andrew L. Weiner
    Jeffrey B. Sand
    GA Bar No. 181568
    Andrew L. Weiner
    GA Bar No. 808278
    WEINER & SAND LLC
    800 Battery Avenue SE
    Suite 100
    Atlanta, GA  30339
    (404) 205-5029 (Tel.)
    (404) 254-0842 (Tel.)
    (866) 800-1482 (Fax)
    js@wsjustice.com
    aw@wsjustice.com

    *Counsel for Plaintiff*